UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PREZIO HEALTH, INC., formerly known as OnSite Services Co., a Delaware company, <br><br>  Plaintiff, <br><br> v. <br><br> JOHN SCHENK, an individual, and SPECTRUM SURGICAL INSTRUMENTS CORP., an Ohio corporation, <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. _____ |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

For its Complaint For Injunctive And Other Relief against defendant John Schenk ("Schenk") and Spectrum Surgical Instruments Corp. ("Spectrum"), plaintiff PREZIO Health, Inc. f/k/a OnSite Services, Co. ("PREZIO"), states:

### NATURE OF THE CASE

1. By this diversity action, PREZIO seeks to enjoin Schenk and Spectrum from using, exploiting and/or disclosing PREZIO's confidential and/or proprietary business information in unfair competition with PREZIO and in violation of Schenk's March 9, 2011 Terms and Conditions of Employment (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit 1. PREZIO seeks to enjoin Schenk from his ongoing material, deliberate and willful breaches of the Agreement's non-competition provision and disclosure of PREZIO's proprietary, confidential and trade secret information and further seeks to enjoin Spectrum from its ongoing material and tortious interference with PREZIO's rights and Schenk's obligations under the Agreement and from the inevitable disclosure by Schenk of

PREZIO's proprietary, confidential and trade secret information. PREZIO also seeks compensatory and other damages against both Schenk and Spectrum.

2. For nearly fifteen years, Schenk worked for PREZIO in several capacities – lastly as a Regional Service Lead based out of New York, which was a recent promotion from Repair Specialist. Schenk's Regional Service Lead job was a sales support position. Throughout Schenk's employment, he had access to PREZIO's confidential and proprietary and/or trade secret business information, including, but not limited to, pricing information, PREZIO's customer lists, key contact personnel and customer needs. During his PREZIO employment, Schenk gained and presently has extensive knowledge of PREZIO's service and sales techniques and strategies, which he did not have prior to joining PREZIO.

3. Schenk's Agreement with PREZIO prohibits Schenk from divulging PREZIO's confidential business information to third parties and especially PREZIO competitors, and placed upon Schenk certain reasonable limitations pertaining to his post-PREZIO employment.

4. Shortly after voluntarily resigning his PREZIO employment, Schenk began to work for one of PREZIO's direct competitors, Spectrum, in a capacity similar to that in which he had worked for PREZIO, and in the same territory. Before Schenk left his PREZIO employment, without PREZIO's consent, Schenk improperly forwarded from his PREZIO email account to a personal AOL account confidential, proprietary and trade secret information consisting of PREZIO's field contact list, a territory map, and product pricing information. A true and correct copy of this email is attached hereto as Exhibit 2.[1] PREZIO reasonably anticipates that Schenk will use and Spectrum will receive this information to compete unfairly with PREZIO for their mutual benefit.

---

[1] To protect PREZIO's confidential and proprietary business information from further dissemination, the two attachments to this email are not included in this filing.

5. The surgical instrument and endoscopic equipment maintenance and repair services industry of which PREZIO and Spectrum are industry participates is extremely competitive. On information and belief, industry participants protect their competitive positions by committing appropriate employees to agreements that limit their competition and prevent them from using confidential, proprietary and trade secret information. Spectrum either knew or at a minimum should have known of the Agreement and its prohibitions on Schenk misappropriating PREZIO's confidential and proprietary business information and working in direct competition with PREZIO. Yet, Spectrum tortiously interfered with Schenk's obligations of noncompetition and confidentiality to PREZIO by hiring Schenk to perform essentially the same services working in the same region he had with PREZIO, knowing that doing so would cause Schenk to breach his obligations to PREZIO and put Schenk in a position where he would inevitably disclose PREZIO's confidential, proprietary and trade secret information. Schenk's and Spectrum's unfair competition, as alleged herein, has and will continue to result in Schenk's and Spectrum's unlawful use and exploitation of PREZIO's confidential and proprietary business and/or trade secret information.

6. It is critically necessary that both preliminary and permanent injunctions issue here to protect PREZIO's legitimate business interests, to stop Schenk's and Spectrum's illegal conduct and to prevent PREZIO from sustaining severe and irreparable harm for which it has no adequate legal remedy. Absent the injunctions PREZIO seeks, PREZIO will continue to suffer further and irreparable harm. PREZIO's need for emergency relief is both real and substantial.

## THE PARTIES

7. PREZIO is a corporation duly organized under the laws of the State of Delaware, with its principal place of business located at 25175 Dequindre Road, Madison Heights,

Michigan. PREZIO's business includes providing operating room workflow solutions to hospitals and healthcare providers throughout the United States. PREZIO's core business segment includes, among others, surgical instrument and endoscopic equipment maintenance and repair services.

8. Schenk was formerly a Regional Service Lead for PREZIO. As such, he was responsible for managing and maintaining PREZIO business of all service categories, developing customer relationships, identifying growth opportunities on surgical instrument repair, endoscopic equipment and instrument management opportunities. Prior to his role as a Regional Service Lead, Schenk worked for PREZIO as an Instrument Repair Technician and Specialist for approximately fifteen (15) years. In this role, Schenk acted as the primary surgical instrument service representative for hospitals and surgery centers. The role encompassed identifying surgical instruments by type, surgical use and functionality to adjust, align, adhere, braze, stencil, serrate, sharpen, deburr, replace parts, finish and passivate surgical instruments to required functionality. Additionally, this role was required to lead quality business reviews, sales calls and pursue and develop a pipeline of all sales opportunities. John Schenk is a citizen of the State of Connecticut, and resides at 2811 High Ridge, Stamford, Connecticut 06903. Schenk currently is employed by Spectrum.

9. Spectrum is an Ohio corporation maintaining its principal place of business in Stow, Ohio. Spectrum is registered with the Connecticut Secretary of State as an entity doing business in Connecticut. Spectrum competes directly with PREZIO in the surgical instrument repair segment of the health care services industry. Spectrum provides surgical instrument repair services and instrument care products to hospitals and surgery centers located throughout the United States. Throughout Schenk's employment with PREZIO, and continuing through the

present, Spectrum has been a direct competitor of PREZIO in that like PREZIO, Spectrum specializes in surgical instrument repair offerings. Spectrum currently employs Schenk as a repair specialist in the same or substantially the same territory that Schenk covered for PREZIO in direct competition with PREZIO.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity exists. None of the parties in this lawsuit reside in the same state, and the matter in controversy exceeds $75,000, excluding interest and costs.

11. This Court has personal jurisdiction over Schenk because he lives and works in the State of Connecticut.

12. The Court has personal jurisdiction over Spectrum because it regularly conducts business activities in Connecticut, avails itself of the benefits and protections of the State of Connecticut in so doing, and committed substantial acts of unfair competition and tortious interference complained of herein in the State of Connecticut.

13. For the forgoing reasons, venue in this District is proper under 28 U.S.C. § 1391(b)(2) and (3).

## FACTUAL BACKGROUND
### Schenk's PREZIO Employment and His Execution of the Agreement

14. On or about July 7, 1998, PREZIO hired Schenk as an Instrument Repair Technician. In December 2012, Schenk relocated to Connecticut where he continued to work as an Instrument Repair Technician. PREZIO later promoted Schenk to Regional Service Lead in or around July 2013 to service the New York area.

15. On or about March 9, 2011, Schenk executed the Agreement.

16. But for Schenk's execution of the Agreement and assent to its terms and requirements, PREZIO would have terminated his employment and denied him access to any of its business information.

17. As a direct result of his employment with PREZIO, and mostly through his work as an Instrument Repair Technician and Specialist for almost 15 years where he acted as the primary surgical instrument service representative for hospitals and surgery centers, Schenk developed and advanced at PREZIO's expense professional relationships with a multitude of healthcare contacts, including surgeons, nurses, physician assistants, staff members, managed care organizations, and other PREZIO customers and prospective customers.

18. The Agreement requires that during and subsequent to his PREZIO employment, Schenk must maintain the strict confidentiality of the PREZIO confidential information and trade secrets ("Confidential Information") to which Schenk had access during his employment. *See* Exhibit 1 at p. 3. Schenk is prohibited by the Agreement from disclosing, divulging, using, publishing, or making accessible to anyone PREZIO's Confidential Information. *Id.*

19. The Agreement defines PREZIO's Confidential Information and trade secrets to include the following:

> "[I]nformation relating to the employer's and its affiliates' manners and methods of doing business, the identity of its customers, suppliers, pricing information, manufacturers, distributors and agents; the confidential terms of contracts and business agreements; and the product development activities and marketing programs in development."

*Id.*

20. Schenk also agreed to promptly return to PREZIO upon termination of his employment "property, equipment, and all documents and data that are the property of the Employer and its affiliates and/or which relate to the business of the Employer and its affiliates, and which are in Employee's possession." *Id.*

6

21.     Pursuant to the Agreement, Schenk also bound himself, for a period of one (1) year following his separation of employment from PREZIO, not to accept employment with any entity which is in competition with PREZIO and not to solicit any of his former PREZIO customers. *Id.*

22.     PREZIO has fully performed all material obligations imposed on it by the Agreement.

### Schenk Accepts Employment With A PREZIO Direct Competitor In Violation Of His Agreement; Spectrum Tortiously Interferes

23.     On or about August 16, 2013, Schenk announced to PREZIO that he was resigning his PREZIO employment, effective August 30, 2013. Rather than disclose to PREZIO that he intended to work for a competitor, Schenk falsely stated to PREZIO management that he was leaving the healthcare industry all together and that he would soon join his brother in a real estate venture.

24.     Schenk kept his employment with Spectrum secret and communicated nothing to acknowledge his intention to abide by his Agreement with PREZIO. Schenk also did not seek PREZIO's consent to him accepting or engaging in employment with Spectrum or any other PREZIO competitor.

25.     The Agreement's Non-Competition provisions (Exhibit 1, p. 3 "Non-Competition"), state, in relevant part:

> "...employee agrees that for a period of twelve (12) months after the date on which his/her employment with Employer terminates, Employee shall not, directly or indirectly: ... (ii) engage in, assist, perform services for, or provide consulting services to any other person, firm, corporation, or other entity in the solicitation of or contact with, any customer, vendor, potential customer, or potential vendor of [PREZIO] that was known in the performance of job duties for [PREZIO] for the purpose of furnishing or doing business with such customer or vendor with regard to medical-surgical services, equipment or any other services or products distributed by or otherwise provided by PREZIO...."

26. This section of the Agreement continues:

> "and/or, (iii) accept employment with, or service as a consultant, advisor, or act in other any other capacity to any other person, firm, corporation or other entity that is in competition with [PREZIO]."

27. Schenk accepted employment with and has provided services to Spectrum in derogation and material breach of these provisions of the Agreement. His continuing employment with Spectrum remains in direct, deliberate and material breach of these provisions of the Agreement, and Spectrum's employment of Schenk when it knew that his employment was likely governed by a non-compete agreement and knew that his employment of Spectrum would cause him to inevitably disclose PREZIO's proprietary, confidential and trade secret information is a tortious interference with the Agreement.

### Schenk Misappropriates PREZIO's Confidential Information

28. By virtue of his employment responsibilities to PREZIO, PREZIO entrusted Schenk with, and Schenk had access to PREZIO's Confidential Information, including: identity of current customers; identity of prospective customers; identity and contact information for decision makers for current and prospective customers; product pricing information; and customer requirements and preferences.

29. In addition, Schenk had access to other PREZIO sensitive business information including methods of doing business, sales techniques and strategies, employee incentive programs, internal procedures, financial information, business plans, and new product and service developments.

30. On June 6, 2013, in anticipation of his leaving PREZIO's employment and his prospective employment with a PREZIO competitor, Schenk improperly and unlawfully forwarded a valuable, proprietary contact list, as well as pricing information and product

specifications, to an external email account believed to be maintained by Schenk for his personal use. *See* Exhibit 2.

31. PREZIO has expended substantial time, money and other valuable business resources developing, refining, assessing, improving and maintaining the secrecy of its Confidential Information identified above to which Schenk had access during his PREZIO employment. This information has, and has had, significant economic value, both actually and prospectively, from not being generally known to others, particularly others in the business in which PREZIO and Spectrum compete. Competitors in that business, such as Spectrum, can derive substantial unearned business and economic competitive advantages through the use and exploitation of the PREZIO Confidential Information known to Schenk and now disclosed or otherwise made available to Spectrum.

32. In addition, PREZIO has expended substantial time, money and other valuable business resources to secure its current customers.

33. PREZIO diligently has taken such reasonable and appropriate measures as have been prudent to maintain the secrecy and confidentiality of its Confidential Information as was disclosed to Schenk during his PREZIO employment. This includes, among other measures, requiring employees granted access to such information to execute secrecy and confidentiality covenants and agreements, such as Schenk's Agreement; narrowly limiting access to and dissemination and use of such Confidential Information; encrypting computers and other electronic data storage devices in which such information is stored; protecting such information through the use of passwords and protocols for preserving the secrecy of passwords; and maintaining and enforcing employment policies and procedures mandating employees' preservation of the confidentiality and secrecy of such information.

### Count I – Against Schenk
### Breach of Contract

34. PREZIO realleges and incorporates by this reference, as though fully set forth herein, the allegations of paragraphs 1 through 33 of this Complaint as this paragraph 34.

35. The Agreement is a binding and enforceable contract.

36. Schenk intentionally, deliberately and repeatedly breached his Agreement, and continues to breach his Agreement, by soliciting, accepting and engaging in employment with Spectrum in direct competition with PREZIO, and misappropriating PREZIO's confidential and proprietary information for his own benefit and the benefit of his new employer, Spectrum.

37. Schenk's violation of the confidentiality and non-competition provisions of the Agreement caused PREZIO, among other things, money damages, loss of competitive position, lost profits, and other damages, and entitles PREZIO to the equitable relief and awards of compensatory damages at law and costs of suit more specifically described herein.

38. PREZIO has performed all of its obligations under the Agreement and Schenk's breach thereof was without legal justification or excuse.

### Count II – Against Schenk
### Violation of Uniform Trade Secrets Act

39. PREZIO realleges and incorporates by this reference, as though fully set forth herein, the allegations of paragraphs 1 through 33 of this Complaint as this paragraph 39.

40. Schenk has misappropriated PREZIO's trade secret information for his own personal use in derogation of PREZIO's rights.

41. Schenk's misappropriation was willful and malicious.

42. PREZIO is entitled to injunctive relief, compensatory damages, punitive damages and attorney's fees under Connecticut General Statutes § 35-53.

## Count III – Against Spectrum
## Tortious Interference With Contract

43. PREZIO realleges and incorporates by this reference, as though fully set forth herein, the allegations of paragraphs 1 through 33 of this Complaint as this paragraph 43.

44. Before and after employing Schenk, Spectrum either actually knew, or should in the exercise of reasonable and ordinary care and diligence have known of the Agreement, and more specifically its provisions relating to Schenk's confidential and proprietary information and non-competition obligations.

45. Spectrum's actions, as aforesaid, constitute tortious interference with contract, specifically unlawful and knowing interference with PREZIO's Agreement with Schenk, which entitle PREZIO to the equitable relief, compensatory and punitive damages awards and costs of suit more specifically described herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff PREZIO respectfully requests that the Court order the following equitable relief in its favor and against Defendants Schenk and Spectrum and all those acting in concert with them:

### Equitable Relief

A. An order preliminarily enjoining Schenk from engaging in any employment duty, responsibility or activity on behalf of Spectrum, including but not limited to any surgical instrument repair or maintenance related function of any type or kind throughout the pendency of this action;

B. An order preliminarily enjoining Schenk from disclosing to any agent, servant, employee or contractor of Spectrum or to any person or entity in active concert with Spectrum, any of PREZIO's Confidential Information as the same is defined in the Agreement throughout the pendency of this action (Exhibit1);

C. An order preliminarily enjoining Spectrum, any agent, servant, employee or contractor thereof, and any person or entity in active concert with any of the same,

    from communicating with Schenk about any of PREZIO's Confidential Information as the same is defined in the Agreement throughout the pendency of this action (Exhibit 1);

D. A permanent injunction enjoining and prohibiting Schenk and Spectrum, and all those in active concert with them, from engaging in any of the conduct preliminarily restrained in accordance with parts A-C inclusive of the foregoing prayer for relief; and

E. Such other, further relief or additional relief in PREZIO's favor and against Schenk and Spectrum as this Honorable Court deems fair, just and equitable in the premises.

## Money Damages

WHEREFORE, by reason of the foregoing, PREZIO further respectfully requests judgment in its favor jointly and severally against Schenk and Spectrum as follows:

A. Compensatory damages in an amount consistent with the proofs at trial in an amount in excess of the jurisdictional minimum for this Court which is sufficient to make PREZIO whole for the economic loss it has sustained by reason of Schenk and Spectrum's unlawful acts set forth herein;

B. Punitive damages in an amount consistent with the proofs at trial in an amount in excess of the jurisdictional minimum for this Honorable Court which is sufficient to make an example of Defendants Schenk and Spectrum, to punish them and to deter them and others from engaging in the unlawful acts set forth herein;

C. Attorney's fees and costs; and

D. Such other and further relief as this Honorable Court deems fair, just and equitable in the premises.

                Respectfully submitted,

                PREZIO Health, Inc.

                By: _____
                    James T. Shearin (ct01326)
                    One of its attorneys

James T. Shearin
PULLMAN & COMLEY, LLC
840 Main Street Street, P.O. Box 7006
Bridgeport, Connecticut
(203) 330-2240 (telephone)
(203) 576-8888 (facsimile)

Ethan E. Trull
Jill C. Taylor
(*pending pro hac vice admission*)
UNGARETTI & HARRIS LLP
3500 Three First National Plaza
Chicago, Illinois 60602
(312) 977-4400 (telephone)
(312) 977-4405 (facsimile)

Dated: October 4, 2013